UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARK BAGLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:06-CV-0617-G |
| ALLIED DOMECQ SPIRITS & WINE ) | |
| USA, INC. d/b/a ALLIED DOMECQ ) | **ECF** |
| SPIRITS, USA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant, Allied Domecq Spirits & Wine, Inc. ("Allied Domecq"), to dismiss the plaintiff's complaint and to compel arbitration. For the reasons discussed below, the motion is granted.

## I. BACKGROUND

Mark Bagley ("Bagley"), the plaintiff, originally filed this suit on March 15, 2006, in the 162nd Judicial District of Dallas County, Texas. Docket Sheet; Notice of Removal at 1. On the basis of diversity of citizenship Allied Domecq removed the case to this court, pursuant to 28 U.S.C. § 1446(b), on April 7, 2006. Notice of

Removal at 1; 28 U.S.C. § 1332.  Bagley seeks compensatory damages stemming from an alleged breached of contract by Allied Domecq.  *See generally* Plaintiff's Original Petition ("Petition").

Allied Domecq and Bagley entered into an employment agreement, effective June 12, 2003, whereby Allied Domecq employed Bagley as Vice President of its Marketing Southern Business Unit.  Petition at 2.  In addition to an annual salary of $160,000, the agreement provides for a severance package payable to Bagley in the event his employment is terminated without cause.  Executive Service Agreement at 1-4, *attached to* Petition *as* Exhibit A.  That package includes a one-time lump sum payment of $160,000, payment of incentive compensation to which Bagley is entitled, continuation of certain employee benefits for a period of one year, and other compensation.  *Id*. at 3.

On September 16, 2005, Allied Domecq notified Bagley that as a result of a partial change in ownership, Bagley's services were no longer required.  Petition at 3.  Bagley alleges that his termination was without cause and asks the court to enforce the aforementioned termination provisions contained in paragraph 5 of his employment agreement.  *Id.*  Allied Domecq, however, argues that Bagley's claim falls within the ambit of the arbitration agreement contained in paragraph 9 of the employment contract and moves the court to compel arbitration.  Defendant's

Motion to Dismiss Plaintiff's Complaint and to Compel Arbitration ("Motion to Dismiss") at 1.

## II. ANALYSIS

### A. The Applicable Law

The Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate contained in any contract involving commerce is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985). The FAA does not, however, preempt state contract law. See *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 477 (1989) ("The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration."). It merely demands that courts enforce privately negotiated arbitration agreements in accordance with the terms of the particular agreement. *Id.* at 479.

In the instant case, the parties included a choice-of-law provision in the contract in which they stipulated that the contract should be construed in accordance with the laws of Connecticut. Executive Service Agreement at 7. When construing arbitration agreements in accordance with state law, courts should give due regard to the strong federal policy favoring enforcement of such clauses. 9 U.S.C. § 1; see *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995); see also *Volt*, 489

U.S. at 475-476.  Therefore, when determining whether the arbitration clause is enforceable, the court will consider the clause against a backdrop of Connecticut law while still giving due regard to the liberal federal policy of enforcement embodied in the FAA.

### B.  The Scope of the Arbitration Clause

In considering a motion to compel arbitration, the first step a court must take "is to determine whether the parties agreed to arbitrate that dispute." *Soler Chrysler-Plymouth*, 473 U.S. at 626.  The arbitration provision contained in paragraph 9 of the employment agreement requires the parties to submit to arbitration "any dispute, claim, or controversy ('grievance') involving the interpretation of this Agreement, the terms, conditions or termination of the Agreement or any other claims arising out of the Executive's employment."  Executive Service Agreement at 6.  The arbitration clause expressly states that it survives the termination of the employment agreement. *Id.*  Considering the breadth[1] of the arbitration clause and the express survival provision, the dispute at issue clearly falls within the scope of the arbitration clause.

---

[1] The United State Supreme Court has characterized arbitration clauses similar to the one at issue here as "broad."  See *Prima Paint Corporation v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397-398 (1967) (labeling as "broad" a clause requiring arbitration of "any controversy or claim arising out of or relating to this Agreement").

C.  <u>Unconscionability of the Arbitration Clause</u>

Bagley correctly asserts that the general contract defense of unconscionability is applicable to agreements to arbitrate.  Plaintiff's Response to Defendant's Motion to Dismiss and Brief in Support ("Response") at 2; see generally *Forshaw v. S.C.I. Connecticut Funeral Services, Inc.*, No. 555164, 2002 WL 2005869, at *2 (Conn. Super. Ct. July 29, 2002) (discussing the defense of unconscionability in relation to an arbitration agreement); see also *Parilla v. IAP Worldwide Services, VI, Inc.*, 368 F.3d 269, 275-276 (3d Cir. 2004) (noting the availability of the general defense of unconscionability with regard to enforcement of arbitration clauses).  Making available the generally applicable defense of unconscionability is in accordance with the purpose of the FAA, which is to place arbitration agreements on an even par with ordinary contract provisions.  See *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("By enacting [the FAA], . . . Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.'") (quoting *Sherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)).

The court's determination of unconscionability is made on a case-by-case basis in light of all the facts and circumstances. See *Forshaw*, 2002 WL 2005869, at *2; see also *Green Tree Financial Corp.–Alabama v. Randolph*, 531 U.S. 79 (2000) (utilizing the case-by-case basis); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 659 (6th Cir.

2003) ("this issue must be decided on a case-by-case basis"). In each case, the party seeking to avoid arbitration bears the burden of establishing the unconscionability of the arbitration clause. See *Green Tree*, 151 U.S. at 92. The defense has two disjunctive prongs: a substantive prong, meant to prevent oppression, and a procedural prong, aimed preventing unfair surprise.[2] See *Forshaw*, 2002 WL 2005869, at *2; see also *Smith v. Mitsubishi Motor Cars of America, Inc.*,[3] 721 A.2d 1187, 1192 (Conn. 1998).

In the case at bar, Bagley contends that the arbitration clause is substantively unconscionable due to the cost-splitting[4] provision contained in paragraph 9(c) of the employment agreement. Response at 2-3; Executive Service Agreement at 6. He argues that the cost of arbitration under the rules of the American Arbitration Association is so exorbitantly expensive that enforcing the arbitration clause essentially precludes him from vindicating his rights. *See* Response at 3; see also

---

[2] Under Connecticut law, it is fairly clear that substantive unconscionability alone is sufficient to satisfy the unconscionability doctrine; however, it is less clear that procedural unconscionability alone would suffice. *Smith v. Mitsubishi Motor Cars of America, Inc.*, 721 A.2d 1187, 1192 n.10 (Conn. 1998) (procedural unconscionability may be dependent upon a simultaneous showing of substantive unconscionability). Since Bagley argues that the arbitration provision is substantively unconscionable, this court need not address the issue of whether a showing of procedural unconscionability alone can satisfy the doctrine.

[3] Bagley cites "*Smith v. Mitsubishi Motor Cars of Am., Inc.*" Response at 2. Westlaw entitles the case "*Smith v. Mitsubishi Motors Credit of America, Inc.*" For the purposes of this opinion, the case names are treated as synonymous.

[4] Cost-splitting means that the parties split evenly the costs of arbitration.

*Parilla*, 368 F.3d at 284 (cost-splitting arrangements can be unconscionable if they preclude a plaintiff from vindicating his statutory rights).

While Bagley correctly characterizes the law regarding unconscionability, he errs in its application. He cites cases in which courts from numerous jurisdictions have found the costs of arbitration to be so high as to preclude *the particular plaintiff* in that case from vindicating his statutory rights. *See generally* Response at 4-6. These cases, however, can be distinguished from the case *sub judice*. Bagley first relies on *Eagle v. Fred Martin Motor Co.*, 809 N.E.2d 1161 (Ohio Ct. App. 2004), an Ohio consumer fraud case wherein a plaintiff successfully argued substantive unconscionability; in that case, however, the court considered evidence sussggesting that the contract was one of adhesion, which had the effect of weakening the presumption of enforceability ordinarily mandated by the FAA. *Eagle*, 809 N.E.2d at 168. Bagley offers no such evidence here. In another of Bagley's cited cases, *Alexander v. Anthony International, L.P.*, 341 F.3d 256 (3d Cir. 2003), the court held unenforceable an arbitration agreement that placed *all* costs of arbitration on the loser of the arbitration (as opposed to merely mandating cost-splitting as in the instant case). Placing the entire burden on one party clearly does more to discourage potential plaintiffs from pursuing their claims than does a cost-splitting provision such as the one at issue. Furthermore, at the time of trial, the plaintiff in *Alexander* demonstrated his inability pay the costs of arbitration. *Id.* at 259 (the plaintiff

worked a low-level refinery job and had three children in college). Here, Bagley has proffered no evidence suggesting that he cannot afford to arbitrate his claim. In *Popovich v. McDonald's Corp.*, 189 F. Supp. 2d 772 (N.D. Ill. 2002), the estimated cost of arbitration was between $48,000 and $126,000. The plaintiff in the instant case estimates that the cost of arbitration would be approximately $7,500, Response at 3-4, which is far less prohibitive than $48,000 or 126,000. Finally, in *Camacho v. Holiday Homes, Inc.*, 167 F. Supp 2d 892 (W.D. Va. 2001), the party opposing arbitration was proceeding *in forma pauperis*.[5] Bagley, an executive previously making in excess of $160,000, Executive Service Agreement at 1, is hardly comparable to an indigent plaintiff.

Each of the cases cited by Bagley illustrates the case-by-case methodology employed by courts when asked to determine unconscionability. Relative to the plaintiffs in the cases he cites, Bagley appears well-situated financially to pursue his breach of contract claim in arbitration. While he has provided an estimated cost to arbitrate of $7,500 per party under the cost-splitting arrangement, Bagley has not shown an inability to pursue his claim at that level of cost. *See* Response at 3-4; see also *Morrison*, 317 F.3d at 659-660 (noting that the burden of demonstrating that the high costs of arbitration would be prohibitive rests with the party opposing

---

[5] *In forma pauperis* literally means "in the form of a pauper." The court ordinarily waives most costs and fees associated with litigation for persons granted this status.

arbitration). On the contrary, the employment contract demonstrates that Bagley was, prior to his termination, a high-level executive earning in excess of $160,000 per year. *See* Executive Service Agreement at 1. Moreover, inasmuch as the costs of litigation generally exceed the costs of arbitration, Bagley's assertion that the high costs of arbitration will preclude him from pursuing his breach of contract claim seems ill-founded. Indeed, he has offered no evidence that the overall cost of litigating this case will be less than the cost of arbitration. In light of Bagley's failure to demonstrate that the costs of arbitration would prohibit him from pursuing his claim and the strong federal policy favoring enforcement of arbitration clauses, this court concludes that the arbitration clause is enforceable in this case.

### III. CONCLUSION

For the reasons stated above, Allied Domecq's motion to dismiss and compel arbitration in this case is **GRANTED**. Within thirty days of the date of this memorandum opinion and order, counsel for Allied Domecq shall serve upon Bagley, the court, and the American Arbitration Association a demand for the arbitration of Bagley's claims. Within thirty days of serving that demand for arbitration, counsel for Allied Domecq shall notify the court, in writing, of the schedule for the arbitration proceeding. Upon the filing of these materials, Bagley's claims in this case will be dismissed without prejudice to assertion of those claims before the arbitral tribunal.

**SO ORDERED**.

July 19, 2006.

                                                _____
                                                A. JOE FISH
                                                CHIEF JUDGE